**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KELLY S. ARNOLD,<br><br>Plaintiff,<br><br>v.<br><br>TURKEY HILL LLC d/b/a TURKEY HILL DAIRY,<br><br>Defendant. | CIVIL ACTION NO. __________<br><br>COMPLAINT AND JURY DEMAND |

**COMPLAINT AND JURY DEMAND**

Plaintiff Kelly S. Arnold ("Plaintiff" or "Ms. Arnold"), by and through undersigned counsel, Donham Law, brings this action against Defendant Turkey Hill LLC d/b/a Turkey Hill Dairy ("Turkey Hill" or "Defendant"), and avers as follows:

**NATURE OF THE ACTION**

1. This action arises under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Ms. Arnold alleges that Turkey Hill terminated her employment in retaliation for her exercise of FMLA rights, interfered with her continuing right to use approved intermittent FMLA leave, and discriminated against her because of her known association with her husband, who has brain cancer and was undergoing continuing cancer treatment.

2. Ms. Arnold worked for Turkey Hill for approximately seventeen years. She alleges that she had a positive work history and no prior verbal warning, written warning, suspension, or other discipline before the events resulting in her discharge.

3. For years, Turkey Hill approved Ms. Arnold for intermittent FMLA leave to care for her husband during chemotherapy and treatment for brain cancer. Her leave was renewed or recertified, and Ms. Arnold used intermittent leave for that purpose.

4. In or around mid-2025, after May 2025, Ms. Arnold was recertified through Turkey Hill's third-party leave administrator for intermittent FMLA leave relating to her husband's ongoing brain-cancer treatment. Her intermittent FMLA status remained active as the events leading to her termination occurred in November 2025.

5. While Ms. Arnold remained approved for intermittent FMLA leave and continued to anticipate using that leave as needed to care for her husband, a coworker accused her of taking ice cream products for personal use. Turkey Hill investigated the accusation and terminated Ms. Arnold. Ms. Arnold denies stealing company product and alleges that Turkey Hill's theft rationale was pretextual and that her ongoing FMLA status, use, and anticipated continued use of intermittent leave were negative factors in the termination decision.

**PARTIES**

6. Plaintiff Kelly S. Arnold is an adult individual and resident of Columbia, Lancaster County, Pennsylvania.

7. Defendant Turkey Hill LLC, doing business as Turkey Hill Dairy, operates a dairy and ice-cream manufacturing facility at 2601 River Road, Conestoga, Lancaster County, Pennsylvania 17516.

8. At all relevant times, Turkey Hill was an employer covered by the FMLA and employed at least fifty employees within the geographic area required by the Act.

9. At all relevant times, Turkey Hill acted through its officers, managers, supervisors, human-resources personnel, employees, and agents acting within the course and scope of their employment or agency.

**JURISDICTION AND VENUE**

10. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 2617(a)(2), and 42 U.S.C. § 12117 because Plaintiff asserts claims arising under the FMLA and ADA.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Turkey Hill does business in this District, Plaintiff worked for Turkey Hill in Lancaster County, Pennsylvania, and the events giving rise to these claims occurred in Lancaster County, within the Eastern District of Pennsylvania.

12. The FMLA does not require exhaustion before the Equal Employment Opportunity Commission ("EEOC") or Pennsylvania Human Relations Commission ("PHRC") as a prerequisite to suit.

13. With respect to her ADA associational-discrimination claim, Plaintiff timely filed a Charge of Discrimination that was dual-filed with the EEOC and PHRC. The Charge expressly identified disability discrimination based on "Association Disability - Spouse" and alleged that Plaintiff's husband was undergoing chemotherapy for brain cancer and that Turkey Hill had approved intermittent FMLA leave for his care.

14. On September 4, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights, see attached as Pl. **Exhibit A**. Plaintiff commenced this action within the applicable ninety-day period and has exhausted the federal administrative prerequisites to her ADA claim.

## FACTUAL ALLEGATIONS

15. Turkey Hill hired Ms. Arnold on or about June 29, 2009. She worked full-time at Turkey Hill's Conestoga manufacturing facility for approximately seventeen years and most recently performed general-utility and break-relief work in ice-cream production and packing operations.

16. Ms. Arnold earned approximately $23.24 per hour and received employment benefits.

17. During her lengthy tenure, Ms. Arnold alleges that she consistently met or exceeded performance expectations, received positive evaluations describing her as an asset to the company, and had not received verbal warnings, written warnings, suspensions, or other discipline before the events resulting in her termination.

18. Ms. Arnold was eligible for FMLA leave. Her husband suffered from brain cancer and underwent chemotherapy and continuing cancer treatment, a serious health condition for which Ms. Arnold provided care.

19. Turkey Hill knew of Ms. Arnold's need for leave to care for her husband. Turkey Hill approved Ms. Arnold for intermittent FMLA leave for that purpose and renewed or recertified the leave over a period of years through its leave-administration process.

20. Ms. Arnold used intermittent FMLA leave to care for her husband during his chemotherapy, approximately six times per year according to her recollection.

21. In or around mid-2025, after May 2025, Ms. Arnold was recertified through Turkey Hill's third-party leave administrator for intermittent FMLA leave to care for her husband in connection with his ongoing cancer treatment. Her intermittent FMLA status remained active as November 2025 approached.

22. In or around November 2025, Turkey Hill employed Timothy Purcell as a Human Resources Business Partner. Mr. Purcell had worked for Turkey Hill for only a short period before Ms. Arnold's termination.

23. On or about November 16, 2025, Ms. Arnold handled three containers of ice cream while working inside Turkey Hill's facility. Her duties included moving product within the facility, including product taken from the production area to the laboratory and cafeteria or break areas for testing, sampling, or related workplace purposes.

24. A coworker accused Ms. Arnold of taking the three containers for personal use and reported that Ms. Arnold had taken product toward the locker-room area.

25. Ms. Arnold denied stealing the product. She explained during the investigation that one container was given to third-shift supervisor Tei Kenyon and that the remaining product was left inside the facility.

26. Ms. Kenyon's own statement corroborated that Ms. Arnold possessed three containers and handed one of them to Ms. Kenyon with instructions to place it in the breakroom freezer. Ms. Kenyon placed that container in the freezer. Ms. Kenyon did not state that she saw Ms. Arnold leave the facility with ice cream.

27. A coworker later photographed ice-cream product in a Turkey Hill freezer. Ms. Arnold contends that the photograph corroborates her explanation that product remained inside the facility and was not taken home for personal use.

28. Turkey Hill maintained video surveillance within the facility. Although its investigation relied on video showing Ms. Arnold handling containers and later appearing with a red bag, Turkey Hill has identified no video showing Ms. Arnold placing ice cream into that bag or leaving the facility with company product.

29. Turkey Hill's own investigation notes state that many of the allegations investigated were unsubstantiated and that some were only partially substantiated.

30. Nevertheless, Turkey Hill concluded that Ms. Arnold committed theft. Its written termination notice stated that she had been observed removing three containers from the production floor and taking them "for personal use."

31. Ms. Arnold disputes that conclusion and alleges that Turkey Hill converted evidence that she moved product within the facility into a definitive conclusion that she stole product, despite the absence of video showing her taking ice cream out of the building and despite evidence that at least one of the three containers was placed in the company breakroom freezer.

32. Turkey Hill terminated Ms. Arnold effective November 24, 2025, while her need for intermittent FMLA leave to care for her husband remained ongoing.

33. At the time of her termination, Ms. Arnold's husband continued to require cancer-related medical care. Ms. Arnold anticipated using her intermittent FMLA leave as needed to care for him in connection with medical appointments and treatment during November and December 2025.

34. Following Ms. Arnold's termination, her husband was forced to cancel the anticipated appointments. The termination also ended Ms. Arnold's ability to use Turkey Hill-provided intermittent FMLA leave to care for him and caused her to lose wages and employment benefits.

35. Ms. Arnold alleges that her ongoing approved FMLA status, her history of using intermittent FMLA leave to care for her husband, her continuing need and anticipated use of such leave, her lengthy employment history, the abrupt escalation

from no prior discipline to discharge, and the weaknesses and inconsistencies in Turkey Hill's theft rationale support an inference that her FMLA activity was a negative factor in the termination decision.

36. Turkey Hill knew that Plaintiff's husband had brain cancer, was undergoing chemotherapy and continuing cancer treatment, and was an individual with a disability within the meaning of the ADA. Turkey Hill had repeatedly approved Plaintiff's intermittent leave specifically so that she could care for him.

37. Plaintiff was qualified to perform the essential functions of her position. She alleges that she had performed her job successfully for approximately seventeen years and had no prior verbal warning, written warning, suspension, or other discipline before the events at issue.

38. Plaintiff's mid-2025 recertification and longstanding intermittent FMLA history reflected that her husband's serious and disabling medical condition remained ongoing and that Plaintiff continued to have caregiving responsibilities associated with his condition. Plaintiff alleges that her longstanding satisfactory work history, absence of prior discipline, continuing association with her husband and his ongoing cancer treatment, and the evidentiary weaknesses in the theft determination support an inference that her husband's known disability and her association with him were factors in the termination decision.

## COUNT I
## FMLA – RETALIATION

39. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

40. Plaintiff engaged in activity protected by the FMLA by requesting, obtaining, using, and maintaining approved intermittent FMLA leave to care for her husband during treatment for a serious health condition.

41. Turkey Hill knew of Plaintiff's FMLA status and activity through its approval, renewal, recertification, leave-administration, and human-resources and supervisory processes. Plaintiff's intermittent FMLA status remained active in 2025. The extent of the knowledge of each person who participated in the termination decision is a matter particularly within Defendant's possession and will be established through discovery.

42. Turkey Hill subjected Plaintiff to an adverse employment action by terminating her employment.

43. Plaintiff's ongoing approved FMLA status, history of intermittent FMLA use, continuing caregiving responsibilities, anticipated continued use of leave, and the circumstances surrounding Defendant's investigation and termination decision, considered together, support a causal connection between her protected FMLA activity and the termination.

44. Plaintiff alleges that Turkey Hill's asserted theft rationale was pretextual and/or that Plaintiff's protected FMLA activity, ongoing approved leave status, and continuing need for intermittent leave were negative factors in the decision to terminate her employment.

45. By terminating Plaintiff because she exercised or attempted to exercise rights protected by the FMLA, Turkey Hill violated 29 U.S.C. § 2615 and applicable FMLA regulations.

## COUNT II
## FMLA – INTERFERENCE

46. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

47. Plaintiff was an eligible employee, Turkey Hill was a covered employer, Plaintiff's husband had a serious health condition, and Plaintiff was entitled to intermittent FMLA leave to care for him.

48. Plaintiff provided sufficient notice of her need for FMLA leave, and Turkey Hill repeatedly approved and recertified that leave, including a recertification through its third-party leave administrator in or around mid-2025, after May 2025.

49. Plaintiff alleges that, at the time of her termination, she remained approved for intermittent FMLA leave for her husband's ongoing cancer treatment

and anticipated using that leave as medically necessary in connection with his continuing care.

50. By terminating Plaintiff under the circumstances alleged above while she remained approved for intermittent FMLA leave and anticipated continuing to exercise those rights, Turkey Hill interfered with, restrained, or denied Plaintiff's exercise or attempted exercise of FMLA rights in violation of 29 U.S.C. § 2615(a)(1).

51. As a direct result of Defendant's FMLA violations, Plaintiff suffered recoverable lost compensation, benefits, and other monetary losses.

**COUNT III**
**ADA - ASSOCIATIONAL DISCRIMINATION**

52. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

53. Plaintiff was qualified to perform the essential functions of her position and was known by Turkey Hill to have a relationship or association with her husband, who had brain cancer and was undergoing chemotherapy and continuing cancer treatment and was an individual with a disability within the meaning of the ADA.

54. Turkey Hill knew of the husband's disability and Plaintiff's association with him through years of leave approvals and Plaintiff's continuing 2025 certification for intermittent leave relating to his ongoing cancer treatment.

55. Turkey Hill terminated Plaintiff while her husband's cancer treatment and Plaintiff's caregiving relationship remained ongoing and under the circumstances alleged above, including Plaintiff's lengthy satisfactory employment history, absence of prior discipline, and the disputed and incomplete evidence underlying Turkey Hill's theft conclusion.

56. Plaintiff alleges that Turkey Hill denied her equal terms and conditions of employment and terminated her because of the known disability of an individual with whom she had a relationship or association, in violation of 42 U.S.C. § 12112(b)(4).

57. Plaintiff does not assert that the ADA required Turkey Hill to accommodate her schedule because of her husband's disability. Rather, she alleges that Turkey Hill took adverse action because of her husband's known disability and her association with him.

58. As a direct and proximate result of Defendant's ADA violation, Plaintiff suffered lost wages and benefits and other compensable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and award the following relief:

A. Declare that Defendant violated Plaintiff's rights under the FMLA and ADA;

B. Award back pay, lost wages, lost employment benefits, and other monetary losses recoverable under the FMLA and ADA;

C. Order reinstatement or, if reinstatement is not feasible, award appropriate front pay and other equitable relief;

D. Award liquidated damages as provided by 29 U.S.C. § 2617(a)(1)(A)(iii);

E. Award compensatory damages available under the ADA, together with prejudgment and post-judgment interest as permitted by law;

F. Award punitive damages under the ADA to the extent supported by the evidence and permitted by law;

G. Award reasonable attorneys' fees, costs, and expenses under the FMLA and ADA; and

H. Grant such other legal and equitable relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

DONHAM LAW

***By: /s/ Jeremy A. Donham***
Jeremy A. Donham, Esquire
PA Bar No. 206980
714 Venture Drive, Suite 144
Morgantown, WV 26508
Telephone: 717-881-7855
Fax: 888-370-5177
Email: J.Donham@Donhamlaw.com

Counsel for Plaintiff Kelly S. Arnold

Date: November 20, 2026